11191

SOUTHALL v. GLOVER

(117 S. E., 184)

BASTARDS—ILLEGITIMATE, WHOSE MOTHER PREDECEASED HER, ENTITLED TO INHERIT FROM GRANDMOTHER.—An illegitimate, whose mother predeceased her mother, the grandmother of the illegitimate, is entitled to inherit from the grandmother.

Before DeVore, J., Aiken, March, 1922.   Reversed.

Action by Mary H. Southall against Luther T. Glover individually and as administrator of the Estate of Mrs. Harriet C. Holley.   From a judgment for defendant the plaintiff appeals:

*Mr. J. B. Salley,* for appellant, cites: *Right of illegitimate to inherit from its mother:* 1 Civ. Code 1912, Sec. 3562; Acts 1920 p. 1039. *Statute remedial and should be liberally construed:* 99 S. C., 278; 77 N. E., 863; Ann. Cas., 1913C-1337. *Illegitimate has inheritable blood:* 99 S. C., 278; Ann. Cas., 1913C-1337. *May inherit from lineal heirs:* 5 Wheat. 258; 77 N. E., 864. *Some hold that they cannot inherit from collateral kin:* 5 Wheat 258, 59 Fed., 245; 116 S. C., 242; Ann. Cas. 1913C-1337; 139 A. L. R., 404; 58 S. W., 284. *While others hold that they can:* Ann. Cas., 1914-D; 58 L. R. A., 452; 105 S. W., 348. *Can inherit from grandmother* 99 S. C., 276; Ann. Cas. 1913C-1337; 77 N. E., 862; 58 L. R. A., 453; 78 Am. Dec., 642; 75 So., 140. *Statutes must be construed with other statutes of descent and distribution:* 99 S. C., 280; Ann. Cas. 1913-C 1337; Ann. Cas. 1914-D 575; 77 N. E., 863. *Statute retrospective:* 99 S. C., 278; 77 N. E., 862; 58 L. R. A., 454.

*Messrs. Hendersons,* for respondent, cite: *Where language of statute is plain it must be construed as written:* 99 S. C., 218; 249 U. S., 451; 99 S. C., 283. *Illegitimate cannot inherit from ancestors of its mother:* 39 Am. Rep., 246. *Nor to inherit after her death property which she*

*would have inherited if living:* 139 A. L. R., 404; 71 S. E., 790; 22 S. E., 153; 48 Vt., 236. *Cannot inherit from uncle:* 85 S. C., 504. *Right to inherit is not a natural right:* 16 A. S. R., 681. *Common Law disabilities stand except where removed by statute:* 27 A. & E. Enc. L., 327. *"Child" or "children" means legitimates:* 3 R. A. L., 773-4; 71 S. C., 355; 13 Cyc., 337; 4 Des. Eq., 433.

April 13, 1923.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The question in this case is whether or not an illegitimate, whose mother predeceased *her* mother, the grandmother of the illegitimate, is entitled to inherit from the grandmother. The intestate, Harriet C. Glover, who was the widow of Whitfield Glover, and who afterwards married Luther Holley, died in 1920. Two children had been born to her, Luther Glover and Estelle Glover. Luther Glover was living at the time of her death. The daughter, Estelle Glover, who had entered into a supposed marriage relation with one Rufus Holley, died many years prior to the death of Harriet C. Glover (Holley), her mother. She left one child, the plaintiff, Mary C. Holley, who subsequently married one Southall, and appears as Mary H. Southall.

It is conceded for the purposes of this action, that Rufus Holley, at the time of his supposed marriage with Estelle Glover, had a living wife, and that Mary C. Holley (Southall) is subject to the bar sinister. The intestate, Mary C. Glover (Holley), at the time of her edath, was seized and possessed of a tract of land containing 274 acres, described in the complaint, and certain personal property.

This action was instituted, at a time not stated in the record for appeal, by Mary C. Holley (now Mary H. Southall), for partition of the estate of her grandmother, claiming that she and Luther S. Glover were the only heirs-at-law of the intestate, and that each was entitled to one-half of the estate. The defendant, Luther S. Glover, uncle of the

plaintiff, resisted the claim of the plaintiff, upon the ground that she was an illegitimate child of his sister, Estelle, who predeceased the intestate, and as such was not entitled to inherit from the grandmother. He therefore claimed the entire estate as the only heir-at-law of his mother. The case was heard upon an agreed statement of facts (substantially as above set forth) by his Honor, Judge DeVore, who filed a decree dated March 31, 1922, sustaining the contention of the defendant. From his decree the plaintiff has appealed to this Court, and by a single exception presents the question indicated in the opening paragraph hereof.

According to my interpretation of the case of *Trout v. Burnett*, 99 S. C., 278; 83 S. E., 684, Ann. Cas., 1916E, 911, the precise question here involved is there definitely decided, and, unless that case is to be overruled, the decree below should be reversed. In that case the intestate, Nancy McLure, partition of whose estate was the subject of the action, died in 1910; she had been married three times; by the first husband she had a lawful son; by the second also a lawful son; by the third no children. At some time between her first grief and "the triumph of hope over experience," perhaps, in her second venture, she gave birth to an illegitimate daughter, Ella, who married a man by the name of McMillan. Ella died several years before the death of her mother, Nancy McLure, which occurred as stated in 1910, leaving three lawful children.

The difference between the *Trout Case* and the case at bar is that in the former, the claimants were the legitimate children of a mother who was an illegitimate daughter of the intestate, and who died before the intestate; in the case at bar, the claimant is an illegitimate child of a mother who was a legitimate daughter of the intestate, and who died before the intestate. If this difference should create any distinction, the claim of the plaintiff is stronger than the claims of the plaintiffs in the *Trout Case,* as the reasoning of the

Court in that case will indicate.  Mr. Justice Watts, who
delivered the opinion of the Court, said:

"We are inclined to give a broad and liberal interpretation
to the act of the Legislature, and not a narrow, restricted
interpretation.  It was clearly the intention of the Legisla-
ture, when they enacted the act in question, that the illegiti-
mate children, whose mother should die intestate, possessed
of any real or personal property, should inherit, as far as
that property is concerned, as an heir; and it was the inten-
tion to make the illegitimate child an heir of the mother of
the property she was possessed of at her death, and in the
event of the illegitimate child's death leaving heirs born in
wedlock, that they should take the share their parent would
have taken if alive.  In other words, it was the intention of
the Legislature by the act to make the illegitimate child an
heir to inherit the property that the mother was seized and
possessed of at her death, and having so made the illegi-
timate's child an heir-at-law, the illegitimate's child would
inherit the share that the illegitimate child would have in-
herited, if alive.  We cannot add to the reasoning of the
admirable report of the master for Spartanburg County, S.
T. Lamham, Esq., on this question.  His report is sustained
by both reason and authority cited by him.  The exceptions
to the decree of his Honor, Judge Shipp, are sustained, and
his decree reversed."

It is not necessary to reproduce here the master's report
which is set forth in the report of the case.  It is sufficient
to say that we thoroughly indorse the commendation of its
able and unanswerable presentation of the matter contained
in the opinion of Mr. Justice Watts, which, with the opin-
ion, appears to me conclusive of the issue here involved.  It
will clearly appear from an examination of the case of
*Carroll v. Burns,* 116 S. C., 242; 107 S. C., 913, that an
entirely different question was presented.  There it was
held that the illegitimate child of a predeceased sister could
not inherit from her aunt—an instance of collateral and not

direct inheritance. That conclusion appears to be in harmony with the great weight of authority that collaterals who are illegitimate are not entitled to inherit. The opinion does not contain a reference to the *Trout Case*, and in no sense appears to have been intended to reverse or even modify it.

Whenever the General Assembly has touched the subject of the rights of illegitimate children, it has evidenced a purpose to remove the ban of disqualification and disgrace from the only innocent party to a sinful transaction, and to that spirit the Court should respond whenever it can reasonably and lawfully do so.

The decree below is reversed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE MARION concur.

MR. JUSTICE FRASER (dissenting) : This is an appeal from a decree in an action for partition, rendered by Judge DeVore. The decree fully states the case and is as follows:

"Plaintiff brings above action, asking partition of a tract of land in Aiken County, claiming a one-half interest therein, and accounting by defendant administrator. From an agreed statement of facts it appears that Harriet C. Holley (formerly Mrs. Harriet C. Glover) died intestate on May 16, 1920, the owner of said land and some small personal estate. The defendant, Luther S. Glover, is her only surviving child, and administered on her estate. A daughter named Estelle predeceased her, dying intestate many years before the year 1906, leaving a daughter, the plaintiff, named Mary H. Southall. It is admitted, for the purpose of this action, that Mrs. Southall is the illegitimate daughter of said Estelle. It is admitted that defendant, Luther S. Glover, the only surviving child of Harriet C. Holley, is her only heir-at-law, and is entitled to the property in question, 'unless it is determined that plaintiff, Mary H. Southall, is also one of her heirs-at-law and distributees.'

"Being an illegitimate, is Mrs. Southall entitled to the interest she claims in the property in question? Under the

Act of 1906 (Act Feb. 24, 1906 [25 St. at Large, p. 156]), she is made an heir to the real and personal property her mother, Estelle, died seized and possessed of. The statute in question reads: 'Any illegitimate child or children, whose mother shall die intestate, possessed of any real or personal property, shall be, so far as said property is concerned, an heir or heirs-at-law, as to such property, notwithstanding any law or usage to the contrary.' Section 1. Under the construction given this statute in case of *Carroll et al. v. Burns et al.*, 116 S. C., 242; 107 S. E., 913, I find that the mother of the plaintiff, when she died intestate, was not seized and possessed of the property in question which her illegitimate daughter, the plaintiff, is now seeking to inherit; that plaintiff is not an heir-at-law to the property in question which said Harriet C. Holley died seized and possessed of, and intestate as to, on May 16, 1920, and that the defendant, Luther S. Glover, is the sole heir-at-law to said property. This answers the issue submitted to me.

"J. W. DeVore, presiding Judge."

*Carroll v. Burns, supra,* fully sustains the decree appealed from. At pages 237, 238, of 116 S. C., at page 913 of 107 S. E., we find:

"The foregoing section provides that an illegitimate child may become an heir of his or her mother, and prescribes the conditions upon which the illegitimate child have the right of inheritance: (1) The mother shall die intestate; (2) she shall be possessed of the real or personal property which the illegitimate child seeks to inherit; and (3) the illegitimate child shall be an heir only as to such property as was possessed by the mother, and of which she died intestate. At the time Emma Petty died, she was not possessed of the property which her daughter is now seeking to inherit. She cannot therefore be considered as an heir of her mother as to such property."

The Act of 1920 (Act March 12, 1920 [31 St. at Large, p. 1039]) does not change the law, so as to affect this case, as Estelle Glover was never possessed of the property.

The judgment appealed from should be affirmed.

MR. JUSTICE WATTS concurs.